KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-7736
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1008-LAB |
| | ) | |
| Plaintiff, | ) | Date:   May 19, 2008 |
| | ) | Time:   2:00 p.m. |
| | ) | |
| v. | ) | The Honorable Larry A. Burns |
| | ) | |
| RUDOLFO TOREZ, | ) | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO** |
| | ) | |
| Defendant. | ) | **1)   COMPEL DISCOVERY AND PRESERVE EVIDENCE;** |
| | ) | **2)   DISMISS INDICTMENT FOR FAILURE TO ALLEGE ESSENTIAL ELEMENTS OF THE OFFENSE;** |
| | ) | **3)   SUPPRESS ANY STATEMENTS MADE BY DEFENDANT;** |
| | ) | **4)   DISMISS INDICTMENT DUE TO A GRAND JURY VIOLATION; AND** |
| | ) | **5)   GRANT LEAVE TO FILE FURTHER MOTIONS** |
| | ) | |
| | ) | **TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |
| | ) | |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's above-referenced Motions.  This Response in Opposition is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

# I

## STATEMENT OF THE CASE

On April 2, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Rudolfo Torrez ("Defendant") with attempted entry after deportation, in violation of 8 U.S.C. § 1326(a) and (b).  On April 8, 2008, Defendant was arraigned on the Indictment and pled not guilty.   On April 28, 2008, the United States filed motions for fingerprint exemplars, reciprocal discovery and leave to file further motions.  On April 28, 2008, Defendant filed motions to compel discovery and preserve evidence,  dismiss the indictment for failure to allege the essential elements of the offense, suppress statements, dismiss the indictment due to a grand jury violation, and grant leave to file further motions.  The United States files the following response in opposition to these motions.

# II

## STATEMENT OF FACTS

### A.    OFFENSE CONDUCT

On March 3, 2008, at approximately 4:55 a.m., Border Patrol Agents were performing line watch duties in an area known as "CHP Lot," which is approximately one mile east of the Otay Mesa, California, Port of Entry, and 100 yards north of the U.S.-Mexico international border.  An infrared scope operator informed Border Patrol Agents that he spotted four individuals running north near the secondary fence along the U.S.-Mexico international border.  Border Patrol Agents responded to the area, and found four individuals near "CHP Lot."  Border Patrol Agents approached the four individuals, identified themselves as Border Patrol Agents, and conducted field interviews.  All four individuals, including an individual later identified as "Rudolfo Torrez," freely admitted that they were citizens and nationals of "Mexico" and did not have documentation to enter or remain legally in the United States. All four aliens were arrested and transported to the Chula Vista Border Patrol Station for processing.

### B.    DEFENDANT'S IMMIGRATION HISTORY

A records check confirmed that Defendant is a citizen and national of El Salvador, not Mexico, and that Defendant was ordered excluded, deported, and removed from the United States to El Salvador pursuant to an order issued by an immigration judge on April 21, 2005.  Defendant was physically removed from the United States to El Salvador on two prior occasions: (1) May 11, 2005; and (2)

1  October 17, 2007.  After Defendant's last deportation, there is no evidence in the reports and records

2  maintained by the Department of Homeland Security that Defendant applied to the U.S. Attorney

3  General or the Secretary of the Department of Homeland Security to lawfully return to the United States.

4  **C.    DEFENDANT'S CRIMINAL HISTORY**

5  Defendant has an extensive criminal history.  The United States, propounds that Defendant has

6  fifteen criminal history points placing him in Criminal History Category VI.

7  On March 1, 2000, Defendant pled guilty and was convicted of driving on a suspended/revoked

8  license, failure to stop, failure to provide proof of financial responsibility, failure to possess a license,

9  and failure to appear, all misdemeanors, in violation of the California Vehicle and Penal Codes, and

10  received a total sentence of 8 days in jail and 3 years probation.

11  On December 15, 2000, Defendant pled guilty and was convicted of failure to provide, a

12  misdemeanor, in violation of California Penal Code § 270, and received a sentence of 3 years probation.

13  Defendant violated his probation on three separate occasions and received additional sentences:

14  (1) September 3, 2002 - probation was revoked and reinstated under the same conditions; (2) April 9,

15  2003 - probation was revoked and reinstated with Defendant receiving a sentence of 50 days in jail; and

16  (3) August 19, 2004 - probation was revoked and Defendant received a sentence of 180 days in jail.

17  On December 15, 2000, Defendant pled guilty and was convicted of driving on a

18  suspended/revoked license, a misdemeanor, and failure to provide proof of financial responsibility, a

19  misdemeanor, in violation of California Vehicle Code Section § 14601 and California Penal Code

20  Section § 270, respectively, and received a sentence of 25 days in jail and 3 years probation.

21  On September 3, 2002, Defendant pled guilty and was convicted of petty theft, in violation of

22  California Penal Code § 484/488, a misdemeanor, and received a sentence of  10 days in jail and 3 years

23  probation.  On January 29, 2004, Defendant's probation was revoked and reinstated.

24  On September 30, 2003, Defendant pled guilty and was convicted of possession of a controlled

25  substance, to wit, approximately 0.5 grams of heroin, in violation of California Health & Safety § 11350

26  and was sentenced to 3 years probation. Defendant violated his probation, which was revoked and

27  reinstated, on three occasions: (1) October 21, 2003; (2) March 5, 2004; and (3) May 10, 2004.

28  //

1    On September 30, 2003, Defendant pled guilty and was convicted of burglary and petty theft,

2    misdemeanors, in violation of California Penal Code §§ 459 and 484/488, and received a sentence of

3    18 days in jail and 3 years probation.

4    On September 3, 2004, Defendant pled guilty and was convicted of second-degree commercial

5    burglary, a felony, in violation of California Penal Code § 459, and received a sentence of 16 months

6    in prison.

7    On September 13, 2005, Defendant pled guilty and was convicted of being a deported alien

8    found in the United States, in violation of 8 U.S.C. § 1326(a) and (b), and received a sentence of 30

9    months in prison and 2 years of supervised release

10                                                **III**

11    **THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS
      ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES**

12

13    **A.        MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

14    As of the date of this Motion, the United States has produced 136 pages of discovery (including

15    reports of the arresting officers and agents, a criminal history report, documents concerning Defendant's

16    prior convictions and immigration history), 1 DVD-ROM containing Defendant's videotaped, post-

17    arrest statement, and two tapes containing the recording of Defendant's hearing before the immigration

18    judge on April 21, 2005.  The United States will continue to comply with its obligations under Brady

19    v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500 et seq.), and Rule 16 of the Federal

20    Rules of Criminal Procedure ("Fed. R. Crim. P.").  At this point the United States has received **no**

21    reciprocal discovery.  In view of the below-stated position of the United States concerning discovery,

22    the United States respectfully requests the Court issue no orders compelling specific discovery by the

23    United States at this time.

24                          **1, 2.        Defendant's Statements And Arrest Reports**

25    The United States has turned over a number of investigative reports, including those which

26    disclose the substance of Defendant's oral statements made in response to routine questioning by United

27    States' law enforcement officers.  If additional reports by United States' agents come to light, the United

28    States will supplement its discovery.  The United States recognizes its obligations under Fed. R. Crim.

P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require the United States to produce statements by Defendant that it does not intend to use at trial. Moreover, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

The United States also objects to Defendant's request for an order for production of any rough notes of United States' agents that may exist. Production of these notes, if any exist, is unnecessary because they are not "statements" within the meaning of the Jencks Act unless they contain a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. See discussion infra Part III.A.19; see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992). The production of agents' notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659 F.2d 932, 941 (9th Cir. 1981). In addition, the United States considers the rough notes of its agents to be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

### 3.   *Brady* **Material**

The United States has complied and will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

1     The United States will also comply with its obligations to disclose exculpatory evidence under

2   Brady v. Maryland, 373 U.S. 83 (1963).  Furthermore, impeachment evidence may constitute Brady

3   material "when the reliability of the witness may be determinative of a criminal defendant's guilt or

4   innocence."   United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks

5   omitted).  However, the United States will not produce rebuttal evidence in advance of trial.  See United

6   States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

7                    **4.     Any Information That May Result in a Lower Sentence**

8     Defendant claims that the United States must disclose information affecting Defendant's

9    sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83

10   (1963).  The United States respectfully contends that it has no such disclosure obligation under Brady.

11     The United States is not obligated under Brady to furnish a defendant with information which

12   he already knows.  See United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  Brady is a rule

13   of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the

14   defendant.  In such case, the United States has not suppressed the evidence and consequently has no

15   Brady obligation.  See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

16     But even assuming Defendant does not already possess the information about factors which

17   might affect his guideline range, the United States would not be required to provide information bearing

18   on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior

19   to his sentencing date.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No

20   [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure

21   remains in value.").  Accordingly, Defendant's demand for this information is unwarranted.

22                    **5.     Defendant's Prior Record**

23     The United States has already provided Defendant with a copy of his criminal record and related

24   court documents, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

25                    **6.     Any Proposed 404(b) or 609 Evidence**

26     The United States has complied and will continue to comply with its obligations under

27   Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid.").  The United States has already

28   provided Defendant with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

1    Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendant

2  with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it

3  intends to use at trial.  See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted

4  for a generalized notice provision which requires the prosecution to appraise the defense of the general

5  nature of the evidence of extrinsic acts.  The Committee does not intend that the amendment will

6  supercede other rules of admissibility or disclosure[.]").

7    The United States intends to introduce Defendant's prior conviction for being an illegal alien

8  found in the United States after deportation, which he sustained on September 13, 2005, as evidence of

9  knowledge, lack of mistake, and modus operandi under Fed. R. Evid. 404(b).  Further, the United States

10  intends to introduce statements made on that prior occasion under Fed. R. Evid. 404(b) as evidence of

11  modus operandi.  The United States has previously produced discovery on this incident.

12    The United States will comply with its obligations under Rule 404(b) with regard to "TECS"

13  records to the extent Rule 404(b) applies.  However, the United States objects to this request for "TECS"

14  records to the extent it constitutes rebuttal evidence because such evidence need not be produced in

15  advance of trial.  See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

16    **7, 10.   Evidence Seized and Tangible Objects**

17    The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E)

18  in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

19  evidence seized and/or tangible objects that are within the possession, custody, or control of the United

20  States, and that are either material to the preparation of Defendant's defense, or are intended for use by

21  the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant.

22    The United States need not, however, produce rebuttal evidence in advance of trial.  See United

23  States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

24    **8.       Request for Preservation of Evidence**

25    The United States will preserve all evidence pursuant to an order issued by this Court.  The

26  United States objects to an overbroad request to preserve all physical evidence.  The United States does

27  not oppose Defendant's request to inspect the firearm and ammunition possessed by and seized from

28  Defendant in the instant offense.

9.    ***Henthorn* Materials**

The United States has complied and will continue to comply with <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality.  <u>See</u> <u>United States v. Booth</u>, 309 F.3d 566, 574 (9th Cir. 2002) (<u>citing</u> <u>United States v. Jennings</u>, 960 F.2d 1488, 1489 (9th Cir. 1992)).   If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an <u>in camera</u> inspection and review.

Defendant's request that the specific prosecutor in this case review or oversee the personnel files is unwarranted and unnecessary. <u>Henthorn</u> expressly provides that it is the "government," not the prosecutor, which must review the personnel files.   <u>Henthorn</u>, 931 F.2d at 30- 31.  Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews.  The United States opposes the request for an order that the prosecutor personally review or oversee the review of personnel files.

11.    **Expert Witness**

The United States has complied and will continue to comply with Fed. R. Crim.  P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705.

12, 13, 15, 20, 23.        **Evidence of Bias or Motive to Lie / Impeachment Evidence/ Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling / *Giglio* Material**

The United States will comply with its obligations to disclose impeachment evidence under <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing.  <u>See</u> <u>United States v. Bernard</u>, 623 F.2d 551, 556 (9th Cir. 1979).

The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in <u>Napue v. Illinois</u>, 360 U.S. 264

1  (1959).  The United States will provide such impeachment material in its possession, if any exists, at

2  the time it files its trial memorandum.  At this time, the United States is unaware of any prospective

3  witness that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her

4  testimony.  The United States is unaware of any evidence that any United States witness' ability to

5  perceive, recollect, communicate or tell the truth is impaired.

6  **14.    Evidence of Criminal Investigation of Any United States' Witness**

7  The United States objects to Defendant's overbroad request for evidence of criminal

8  investigations by federal, state, or local authorities into prospective government witnesses.  The United

9  States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and

10 all evidence that a prospective government witness is under investigation by federal, state or local

11 authorities.  Moreover, as discussed above, the United States has no obligation to disclose information

12 not within its possession, custody or control.  See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir.

13 1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files

14 outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th

15 Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was

16 aware but over which it had no actual control); cf. Beaver v. United States, 351 F.2d 507 (9th Cir. 1965)

17 (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of

18 United States and does not apply to a recording in possession of state authorities).

19 The United States recognizes and will comply with its obligations under the rules of discovery

20 and Ninth Circuit precedent to disclose exculpatory and impeachment information.  The United States

21 also recognizes its obligation to provide information--if any exists--related to the bias, prejudice or other

22 motivation of United States' trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959),

23 when it files its trial memorandum.

24 **16, 17.  Names of Witnesses and Witness Addresses**

25 The United States objects to Defendant's request for witness addresses and phone numbers.

26 Defendant is not entitled to the production of addresses or phone numbers of possible witnesses for the

27 United States.  See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v.

28 Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert denied, 419 U.S. 834 (1974).  None of the cases cited

by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses.  There is no obligation for the United States to provide addresses of witnesses that the United States intends to call or not call.  Therefore, the United States will not comply with this request.

The United States will produce the names of witnesses it intends to call at trial.  Defendant has already received access to the names of potential witnesses through the discovery sent to his counsel.  The United States is not aware of any individuals who were witnesses to Defendant's offense except the law enforcement agentes who apprehended him.  The names of these individuals have already been provided to Defendant.

### 18.     **Statements Relevant to the Defense**

The United States objects to the request for "any statement relevant to any possible defense or contention" as overbroad and not required by any discovery rule or Ninth Circuit precedent.  Therefore, the United States will only disclose relevant statements <u>made by Defendant</u> pursuant to this request.

### 19.     **Jencks Act Material**

The United States will fully comply with its discovery obligations under the Jencks Act.  For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. <u>See</u> 18 U.S.C. § 3500(e).  Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said.  <u>United States v. Boshell</u>, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing <u>Goldberg v. United States</u>, 425 U.S. 94, 98 (1976)).  In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes."  <u>United States v. Cedano-Arellano</u>, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination.  <u>See</u> <u>United States v. Robertson</u>, 15 F.3d 862, 873 (9th Cir. 1994).  Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under <u>Brady</u>) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements.  <u>See</u> <u>United States v. Bernard</u>, 623 F.2d 551, 556 (9th

1  Cir. 1979). Accordingly, the United States reserves the right to withhold Jencks Act statements of any

2  particular witness it deems necessary until after they testify.

3  **21, 22.  Agreements/Informants and Cooperating Witnesses**

4  Defendant incorrectly asserts that <u>Roviaro v. United States</u>, 353 U.S. 52 (1957), establishes a

5  <u>per se</u> rule that the United States must disclose the identity and location of confidential informants used

6  in a case. Rather, the Supreme Court held that disclosure of an informer's identity is required only

7  where disclosure would be relevant to the defense or is essential to a fair determination of a cause. <u>Id.</u>

8  at 60-61. Moreover, in <u>United States v. Jones</u>, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

9  
10  The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

11  

12  <u>Id.</u> at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact

13  anything to disclose, at this point in the case.

14  That said, the United States is unaware of the existence of an informant or any cooperating

15  witnesses in this case. The United States is also unaware of any agreements between the United States

16  and potential witnesses. However, as previously stated, the United States will provide Defendant with

17  a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial

18  memorandum is filed, although delivery of such a list is not required. <u>See United States v. Dischner</u>,

19  960 F.2d 870 (9th Cir. 1992); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987); <u>United States</u>

20  <u>v. Culter</u>, 806 F.2d 933, 936 (9th Cir. 1986).

21  **24.     Reports of Scientific Tests or Examinations**

22  The United States will provide Defendant with any scientific tests or examinations, in

23  accordance with Fed. R. Crim. P. 16(a)(1)(F).

24  **25.     Residual Request**

25  As indicated, the United States will comply with its discovery obligations in a timely manner.

26  **26.     Alien File ("A-File")**

27  The United States objects to Defendant's request for a "full copy" of his Alien File ("A-File").

28  In addition, the United States objects to Defendant's request to inspect his A-File. This information is

1   equally available to Defendant through a Freedom of Information Act request.  Even if Defendant could

2   not ascertain the A-File through such a request, the A-File is not Rule 16 discoverable information.  The

3   A-File contains information that is not discoverable like internal government documents and witness

4   statements.  See Fed. R. Crim. P. 16(a)(2).  Witness statements would not be subject to production until

5   after the witness for the United States testifies and provided that a "motion" is made by Defendant.  See

6   Fed. R. Crim. P. 16(a)(2) and 26.2.  Thus, the A-File associated with Defendant need not be disclosed.

7   Defendant claims that the A-File must be disclosed because (1) it may be used in the United

8   States' case-in-chief; (2) it is material to his defense; and (3) it was obtained from or belongs to him.

9   See Fed. R. Crim. P. 16(a)(1)(E).  The United States will produce documents it intends to use in its

10  case-in-chief.  Evidence is material under Brady only if there is a reasonable probability that had it been

11  disclosed to the defense, the result of the proceeding would have been different.  See United States v.

12  Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).  However, Defendant has not shown how documents

13  in the A-File are material.  Finally, Defendant does not own the A-File.  It is an agency record.  Cf.

14  United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997) (noting that A-File documents are

15  admissible as public records).  Should the Court order inspection of relevant documents from the A-File,

16  the United States will facilitate the inspection as it does in other cases.

**B.**    **DISMISS INDICTMENT BECAUSE IT FAILS TO ALLEGE ELEMENTS**

**1.**    **Failure to Allege Overt Act Was a Substantial Step**

19  Defendant asserts that the indictment "fails to state an offense, since it does not allege that Mr.

20  Torrez committed an overt act – a required element in 'attempt' cases." [Def. Motion at 8.] Defendant's

21  motion to dismiss the indictment is based on a Ninth Circuit case that has been overruled by the

22  Supreme Court. [Def. Motion at 3-5 (relying on United States v. Resendiz-Ponce, 425 F.3d 729 (9th Cir.

23  2005), overruled by -- U.S. --, 127 S.Ct. 782, 166 L.Ed.2d 591 (2007).] As such, Defendant's argument

24  is foreclosed by Supreme Court precedent.

25  Federal Rule of Criminal Procedure 7(c)(1) provides that an indictment "must be a plain,

26  concise, and definite written statement of the essential facts constituting the offense charged."  In

27  Resendiz-Ponce, the Supreme Court expressly held that an indictment alleging attempted illegal reentry

28  need not specifically allege a particular overt act or any other component part of the offense.  See 127

S.Ct. 782, 787-88 (emphasis added). The Court noted that "[n]ot only does the word 'attempt' as used in the common parlance connote action rather than mere intent, but more importantly, as used in the law for centuries, it encompasses both the overt act and intent elements." Id. at 787. The word "attempt" coupled with the specification of the time and place of the defendant's attempted illegal reentry was sufficient to inform the defendant of the charges against him and to enable ample protection against multiple prosecutions for the same crime. Id. at 788 (applying the logic in Hamling v. United States, 418 U.S. 87, 117-19, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)). For these reasons, the Court concluded that the indictment in Resendiz-Ponce complied with Rule 7(c)(1) and did not deprive the defendant of any significant constitutional protections. Resendiz-Ponce, 127 S.Ct. at 788.

Defendant also argues that the indictment should be dismissed because it does not allege an overt act that was a "substantial step towards committing the offense." [Def. Motion at 4-5.] This argument, too, is foreclosed by the Supreme Court's holding in Resendiz-Ponce. The Court held that the words - "took a substantial step" - were implicit in the word "attempt." Id. at 788 n.4. As such, the Court did not believe that adding those four words to the indictment would have given the defendant any greater notice of the charges against him or protection against future prosecution. Id.

Similar to the indictment in Resendiz-Ponce, the indictment in this case implicitly alleged that Defendant engaged in the necessary overt act by simply alleging that Defendant "attempted to enter the United States" by crossing the border from Mexico into the United States on or about February 2, 2008. This is sufficient to allege the elements of the offense, and therefore, the indictment was not defective. See id. at 787-88. Adding the words "took a substantial step" would not have given Defendant any greater constitutional protection. See id. at 788 n.4. Thus, Defendant's motion to dismiss the indictment on this ground should be denied.

### 2. Failure to Set Out Date of Prior Felony Conviction and Prior Removal

Defendant next argues that the Court should dismiss the Indictment for failure to allege both the dates of a previous felony conviction and of a previous removal from the United States, subsequent to that conviction. [Def. Mot. at 11.] This argument also lacks merit.

As the Ninth Circuit teaches in its decision in United States v. Salazar-Lopez, 506 F.3d 748 (9th Cir. 2007), "the date of the removal, or at least the fact that [Defendant] had been removed after his

conviction" should be alleged in the indictment. <u>Id.</u> at 752. The indictment addressed by the Ninth Circuit in <u>Salazar-Lopez</u> did not have the requisite language, and therefore the Court performed a harmless error analysis. <u>Id.</u> at 752-755. Here, however, the Indictment expressly states: "It is further alleged that defendant RUDOLFO TORREZ was removed from the United States subsequent to December 13, 2005." That date correlates with Defendant's prior conviction and is consistent with <u>Salazar-Lopez</u>. As such, the Court should deny Defendant's motion to dismiss.

## C.     <u>SUPPRESS ANY STATEMENTS MADE BY DEFENDANT</u>

Defendant moves this Court for an order suppressing any statements because they were allegedly made while in custody, citing <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Defendant specifically asks for a suppression hearing to determine the admissibility of any statements. As explained further below, the United States does not believe that a suppression hearing is necessary to prove admissibility; however, if the Court chooses to hold an evidentiary hearing on Defendant's motion, the United States will prove that Defendant's statements were voluntary, Defendant was not subject to custodial interrogation, and the statements are, therefore, admissible.[1] Defendant's motion should be denied because (1) he failed to provide a declaration as required under the local rules, and (2) on the merits because he was not in custody when he made his incriminating statements in the field. Moreover, any evidence derived from Defendant's statements should not be suppressed because the evidence was properly obtained without any due process violation.

### 1.     <u>Deny Motion Because Defendant Failed To Comply With The Local Rules</u>

This Court can and should deny Defendant's motion without a suppression hearing. Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. <u>See</u> <u>United States v. Batiste</u>, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not

---

[1] Defendant does not argue that any pre-arrest statements made by him should be suppressed, which they should not be because Defendant was not in custody at that time. <u>See Miranda</u>, 384 U.S. 436 (holding that under the Fourth Amendment a person must be advised of his rights prior to questioning after custodial arrest); <u>United States v. Butler</u>, 249 F.3d 1098 (9th Cir. 2001) ("The sine qua non of <u>Miranda</u> is custody.").

1    required to hold an evidentiary hearing."); <u>United States v. Wardlow</u>, 951 F.2d 1115 (9th Cir. 1991)

2    (defendant forfeited right to evidentiary hearing on motion to suppress by not properly submitting

3    declaration pursuant to similar local rule in Central District of California); <u>United States v. Moran-</u>

4    <u>Garcia</u>, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite

5    and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to

6    suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate factual

7    finding shall be supported by declaration(s). . . .  The Court need not grant an evidentiary hearing where

8    either party fails to properly support its motion for opposition.").

9        Here, Defendant has failed to support his allegations with a declaration, in clear violation of

10   Criminal Local Rule 47.1(g).  Moreover, Defendant's brief allegations fail to establish a <u>Miranda</u>

11   violation, clearly making it unnecessary to hold an evidentiary hearing in this case.  <u>Cf.</u> <u>United States</u>

12   <u>v. Howell</u>, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be

13   held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to

14   enable the trial court to conclude that contested issues of fact exist." (citation omitted).

15       Defendant does not dispute that no custodial interrogation occurred after Defendant invoked his

16   right to silence.  Defendant does not allege coercion, threats, or promises induced him to make his

17   statements.  Defendant does not allege that law enforcement officers violated his constitutional rights

18   by continuing to question him after he invoked. "The fundamental import of the privilege while an

19   individual is in custody is . . .whether he can be interrogated . . .Volunteered statements of any kind are

20   not barred by the Fifth Amendment . . . ." <u>Miranda</u>, 384 U.S. at 478.  Without interrogation, there can

21   be no <u>Miranda</u> violation, and a voluntary statement is admissible.  <u>See</u> <u>Medeiros v. Shimoda</u>, 889 F.2d

22   819, 825 (9th Cir. 1989).  For all the above reasons, this Court should deny Defendant's Motion.

23   <u>See</u> <u>Batiste</u>, 868 F.2d at 1092 (stating that Government proffer alone is adequate to defeat a motion to

24   suppress where the defense fails to adduce specific and material disputed facts).  For these reasons,

25   Defendant's motion to suppress statements should be denied.

26   //

27   //

28   //

1                **2.    Defendant Was Not In Custody When He Made Field Admissions**

2         When a person has been deprived of his or her freedom of action in a significant way,

3 Government agents must administer <u>Miranda</u> warnings prior to questioning the person.  <u>Miranda v.</u>

4 <u>Arizona</u>, 384 U.S. 436 (1966).  Such a requirement thus has two components: (1) custody, and (2)

5 interrogation.  <u>Id.</u> at 477-78.  Whether a person is in custody is measured by an objective standard.

6 <u>Berkemer v. McCarty</u>, 468 U.S. 420, 442 (1984).  A court must examine the totality of circumstances

7 and determine "whether a reasonable innocent person in such circumstances would conclude that after

8 brief questioning he or she would not be free to leave."  <u>United States v. Booth</u>, 669 F.3d 1231, 1235

9 (9th Cir. 1981); <u>see also</u> <u>United States v. Beraun-Perez</u>, 812 F.2d 578, 580 (9th Cir. 1980).  Factors

10 relevant to this determination are "1) the language used to summon the individual; 2) the extent to which

11 the defendant is confronted with evidence of guilt; 3) the physical surroundings of the interrogation; 4)

12 the duration of the detention; and 5) the degree of pressure applied to detain the individual."  <u>Id.</u>

13 (citation omitted).

14         The Supreme Court held that in the "general interest of effective crime prevention and

15 detection...a police officer may in appropriate circumstances and in an appropriate manner approach a

16 person for purposes of investigating possible criminal behavior even though there is no probable cause

17 to make an arrest."  <u>Terry v. Ohio</u>, 392 U.S. 1, 22 (1968).  This authorized investigatory detention or

18 stop falls short of custody when a Border Patrol agent does not have enough information to execute an

19 arrest, and must investigate further through brief, routine questioning about citizenship and immigration

20 status.  <u>See</u> <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 878-88 (1975); <u>United States v.</u>

21 <u>Galindo-Gallegos</u>, 244 F.3d 728, 731-32 (9th Cir.), <u>modified by</u> 255 F.3d 1154 (9th Cir. 2001).

22         The case of <u>Florida v. Royer</u>, 460 U.S. 491 (1983), is instructive.  In Royer, two police detectives

23 at the Miami International Airport were observing Royer and thought he fit a "drug courier profile."

24 As Royer walked over to the airline boarding area, the two detectives approached him, identified

25 themselves as police officers, and asked if Royer had a "moment" to speak with time.  Royer said,

26 "Yes."  <u>Id.</u> at 493-494.  Upon request, Royer produced his airline ticket and his driver's license.  When

27 asked why the ticket was in the name of "Holt," instead of the name "Royer," as on his license, Royer

28 said a friend had made the reservation in the other name.  Royer was noticeably more nervous during

this conversation, whereupon the detectives told him they were narcotics investigators and that they suspected him of transporting narcotics. Id. at 494. The detectives then asked Royer to accompany them to a room 40 feet away, but kept his ticket and identification. Royer said nothing, but went with them. Id.

In deciding the case, the Supreme Court noted:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. (Citations omitted.) Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. United States v. Mendenhall, 446 U.S. 544, 555, 100 S. Ct. 1870, 1877, 64 L. Ed.2d 497 (1980) (opinion of Stewart, J.). The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. (Citation omitted).

Id. at 497-98 (citations omitted).

Finally, the Ninth Circuit decided this issue in Benitez-Mendez v. Immigration and Naturalization Service, 752 F.2d 1309, 1310 (9th Cir. 1984), in which a Border Patrol officer approached and questioned a worker in a field after a number of other workers had fled upon seeing the Border Patrol. The Ninth Circuit found that no seizure had taken place in regard to the initial questioning of the individual by the Border Patrol. The Court stated that "[f]rom the record, it does not appear that the Border Patrol officer's initial encounter with petitioner amounted to a seizure under the Anderson test. The officer approached the petitioner in an open field and asked him several questions to which he responded voluntarily. There is no evidence of the use of physical force, a display of a weapon, or the threatening presence of several officers." Id. at 1311.

Detaining a person for routine border questioning is not custodial. United States v. Troise, 796 F.2d 310, 314 (9th Cir. 1986); see also United States v. Galindo-Gallegos, 244 F.3d 728, 731 (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001) (Ninth Circuit upheld Judge Gonzalez's denial of a defendant's motion to suppress his field statements). In Galindo-Gallegos, patrol agents apprehended the defendant and others running near the Mexican border. Once they had the 15 or 20 people seated, an agent asked them what country they were from and whether they had a legal right to be in the United States. Id. The defendant said that he was from Mexico and had no such right. Id. The border patrol

17

1   agents did not advise the group of their <u>Miranda</u> rights prior to this questioning. <u>Id.</u> After the defendant

2   admitted that he was an alien illegally in the United States, he and the others were handcuffed and put

3   into one of the vehicles. <u>Id.</u> The Ninth Circuit affirmed the district court's decision not to suppress the

4   defendant's field statements. <u>Id.</u>

5          This case is analogous to <u>Royer,</u> <u>Benitez-Mendez,</u> and <u>Galindo-Gallegos</u>. Here, Border Patrol

6   agents were performing line watch duties approximately 100 yards north of the U.S.-Mexico border,

7   when an infrared scope operator spotted four individuals running north near the secondary fence.

8   Agents responded to the area and found four individuals in an area known to be used for illegal entry.

9   Agents approached the four individuals and identified themselves as Border Patrol agents. Agents

10  conducted a field interview of Defendant as to his citizenship and right to be in the United States.

11  Defendant responded that he was a citizen of Mexico with no legal right to be in the United States. <u>See</u>

12  <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited prior to

13  <u>Miranda</u> warnings during procedures "necessarily attendant to the police procedure [are] held by the

14  court to be legitimate" and admissible).

15         Defendant's field admissions were made during a brief investigatory stop. <u>See</u>, <u>e.g.</u>, <u>United</u>

16  <u>States v. Brignoni-Ponce</u>, 422 U.S. 873, 878-89 (1975) (noting that it is well established that law

17  enforcement may make a brief investigatory stop and ask questions about citizenship and immigration

18  status); <u>United States v. Woods</u>, 720 F.2d 1022, 1029 (9th Cir. 1983) (holding that persons subjected

19  to brief investigatory detentions are not entitled to <u>Miranda</u> warnings). Defendant answered those

20  questions voluntarily. The record is devoid of any suggestion that the officers physically restrained

21  Defendant or restricted his liberty in any meaningful way. Further, the fact that officers were armed or

22  displayed badges does not turn a consensual encounter into a custodial situation. <u>See United States v.</u>

23  <u>Drayton</u>, 536 U.S. 194, 204-205 (2002). During this questioning, Defendant was not placed in

24  handcuffs or searched.  There is simply nothing to suggest that Defendant was in custody during his

25  field interview and his statements to officers in the field are admissible at trial.

26         Defendant, however, cites <u>United States v. Beraun-Panez</u>, 830 F.2d 127 (9th Cir. 1987), in

27  support of his argument that he was in custody at the time of his field admission. [<u>See</u> Defendants'

28  Motion to Dismiss the Indictment, Docket No. 15, at 5-6.] However, this case is distinguishable. In

08CR1008-LAB

1   Beraun-Panez, a subject was separated from his co-worker in a remote rural location prior to

2   questioning.  Galindo-Gallegos, 244 F.3d at 731 (citing Beraun-Perez, 830 F.2d at 581-82).  The Ninth

3   Circuit factually distinguished Beraun-Perez in Galindo-Gallegos, holding that the facts in the latter

4   were more analogous to Berkmer v. McCarty, where the Supreme Court held that questioning in public

5   where witnesses are likely and available mitigates against the risk of harms identified in Miranda.  See

6   Galindo-Gallegos, 244 F.3d at 732.

7       Here, Agents approached four individuals in an area known for illegal entry, approximately 100

8   yards north of the border fence.  Agents conducted the Defendant's interview in the presence of three

9   other suspected aliens, which mitigated against the risk of harms identified in Miranda.  Further, Agents

10  simply stood and spoke with Defendant, thus obviating any physical contact.  Also, Defendant was

11  found in "public for the reason that mattered; no alien had reason to fear abuse by an officer and an

12  unscrupulous officer would have been deterred from using illegitimate means by all the witnesses."

13  Galindo-Gallegos, 244 F.3d at 732.  As in the Supreme Court's holding in Berkemer, there was minimal

14  risk here of the abuses addressed by Miranda because the setting and the presence of others, including

15  motorists using the highway, mitigated against misconduct.  Id.

16      For all of the foregoing reasons, the Court should deny Defendant's motion to suppress all

17  statements.

18          **D.      MOTION TO DISMISS INDICTMENT – GRAND JURY VIOLATION**

19      Defendant makes contentions relating to two separate instructions given to the grand jury during

20  its impanelment by District Judge Larry A. Burns on January 10, 2007.  [Def. Mot. at 14-30 (addressing

21  instructions on probable cause and exculpatory evidence, as well as comments during *voir dire* of the

22  grand jury panel).]  Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408

23  F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional,

24  Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so

25  doing rendered them improper to the point that the Indictment should be dismissed. Defendant's

26  contention is contrary to Ninth Circuit precedent, and for these reasons, Defendant's motion to dismiss

27  the Indictment should be denied.[2]

28

_____

        [2]  The United States contends that this motion lacks merit.  However, if the Court considers
otherwise, the Unite States would request the Court grant leave for the United States to file more
expansive briefing on this issue.

1    **D.     LEAVE TO FILE FURTHER MOTIONS**

2         The United States does not oppose Defendant's request to file further motions if they are based

3    on new discovery or other information not available to Defendant at the time of this motion hearing.

4                                              **IV**

5                                         **CONCLUSION**

6         For the foregoing reasons, the United States requests the Court deny Defendant's Motions to

7    Compel Discovery/Preserve Evidence, Dismiss the Indictment For Failure to Allege Essential Elements

8    of the Offense, Suppress Statements Made by Defendant, Dismiss the Indictment Due to Grand Jury

9    Violation, and Grant Leave to File Further Motions, unless unopposed.

10        DATED: May 13, 2008.

11                                           Respectfully submitted,

12                                           KAREN P. HEWITT
                                             United States Attorney

13

14                                           /s/ *Joseph J.M. Orabona*
                                             JOSEPH J.M. ORABONA

15                                           Assistant United States Attorney

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 08CR1008-LAB |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| v. | ) | |
| | ) | |
| RUDOLFO TORREZ, | ) | |
| | ) | |
| Defendant. | ) | |
| —————————————————— | ) | |

IT IS HEREBY CERTIFIED that:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of the **United States' Response in Opposition to Defendant's Motions to (1) Compel Discovery and Preserve Evidence; (2) Dismiss the Indictment for Failure to Allege Essential Elements; (3) Suppress Statements; (4) Dismiss the Indictment Due to a Grand Jury Violation; and (5) Grant Leave to File Further Motions** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

> Candis Mitchell, Esq.
> Federal Defenders of San Diego, Inc.
> 225 Broadway, Suite 900
> San Diego, California 92101-5008
> *Lead Attorneys for Defendant*

A hard copy is being sent to chambers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 13, 2008.

/s/ **Joseph J.M. Orabona**
JOSEPH J.M. ORABONA
Assistant United States Attorney