KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Facsimile: (619) 235-2757
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 08CR1008-LAB |
| Plaintiff, | ) |
| | ) Date:   July 7, 2008 |
| | ) Time:  2:00 p.m. |
| v. | ) |
| | ) The Honorable Larry A. Burns |
| RUDOLFO TORREZ, | ) |
| | ) **STATEMENT OF FACTS AND** |
| | ) **MEMORANDUM OF POINTS AND** |
| Defendant. | ) **AUTHORITIES IN SUPPORT OF MOTIONS** |
| | ) |
| | ) |
| _____ | ) |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P.

HEWITT, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby

files its Motions In Limine in the above-referenced case to (A) Exclude All Witnesses Except The Case

Agent; (B) Admit A-File Documents And Testimony by the A-File Custodian; (C) Admit Certificate

Of Non-Existence; (D) Admit Audiotape And Transcript Of Deportation Hearing; (E) Admit Certified

Transcripts; (F) Admit Expert Testimony; (G) Admit 404(b) and 609 Evidence; (H) Prohibit Collateral

Attack Of Deportation; (I) Prohibit Certain Types of References by Defendant; (J) Preclude Expert

Testimony By Defense; (K) Preclude Argument Regarding Warning; (L) Preclude Argument Regarding

Duress And Necessity; (M) Preclude Self-Serving Hearsay; and (N) Renewed Motion For Reciprocal

Discovery.  These motions in limine are based on the files and records of this case together with the

attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

On April 2, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Rudolfo Torrez ("Defendant") with attempted entry after deportation, in violation of 8 U.S.C. § 1326(a) and (b).  On April 8, 2008, Defendant was arraigned on the Indictment and pled not guilty.  On April 28, 2008, both parties filed motions.  On May 13, 2008, the United States filed its response in opposition to Defendant's motions. On May 27, 2008, the Court denied (1) the motion for fingerprint exemplars (as the parties stipulated to fingerprints), (2) the motions to file further motions, (3) motion to dismiss the indictment, (4) motion to suppress statements, and (5) motion to dismiss the indictment due to improper grand jury instructions.  The Court found as moot the motion to compel discovery. The motion in limine hearing is set for July 7, 2008.  As such, the United States files this memorandum of points and authorities in support of the following motions in limine.

**II**

**STATEMENT OF FACTS**

A.     **INSTANT OFFENSE – ILLEGAL REENTRY (ATTEMPT)**

   1.     **Apprehension of Defendant Near Otay Mesa Port of Entry**

On March 3, 2008, at approximately 4:55 a.m., Border Patrol Agents were performing line watch duties in an area known as "CHP Lot," which is approximately one mile east of the Otay Mesa, California, Port of Entry, and 100 yards north of the U.S.-Mexico international border.  An infrared scope operator informed Border Patrol Agents that he spotted four individuals running north near the secondary fence along the U.S.-Mexico international border.  Border Patrol Agents responded to the area, and found four individuals near "CHP Lot."  Border Patrol Agents approached the four individuals, identified themselves as Border Patrol Agents, and conducted field interviews.  All four individuals, including an individual later identified as "Rudolfo Torrez," freely admitted that they were citizens and nationals of "Mexico" and did not have documentation to enter or remain legally in the United States. All four aliens were arrested and transported to the Chula Vista Border Patrol Station for processing.

/ /

/ /

### 2.    Immigration Check

On March 3, 2008, Defendant was fingerprinted by Agent Denning.  A routine records check showed that Defendant had been previously deported and had been convicted of multiple felony charges.  The records also revealed that Defendant is currently on supervised release in Texas for a prior conviction for illegal reentry, in violation of 8 U.S.C. § 1326.  Finally, the records revealed that Defendant was a citizen and national of El Salvador, and not a citizen and national of Mexico, as he had previously told agents in the field.

### 3.    Advice of Rights

On March 3, 2008, at approximately 11:55 a.m., Defendant informed agents that he was under the influence of heroin.  Due to this claim, agents waited to advise Defendant of his <u>Miranda</u> rights.  At approximately 2:58 p.m., Agents advised Defendant of his <u>Miranda</u> rights.  Defendant invoked his right to remain silent.

### B.    DEFENDANT'S IMMIGRATION HISTORY

Defendant is a citizen and national of El Salvador, not Mexico.  Defendant was ordered excluded, deported, and removed from the United States to El Salvador pursuant to an order issued by an immigration judge on April 21, 2005.  Defendant was physically removed from the United States to El Salvador on two prior occasions: (1) May 11, 2005; and (2) October 17, 2007.  After Defendant's last deportation, there is no evidence in the reports and records maintained by the Department of Homeland Security that Defendant applied to the U.S. Attorney General or the Secretary of the Department of Homeland Security to lawfully return to the United States.

### C.    DEFENDANT'S CRIMINAL HISTORY

Defendant has an extensive criminal history.  The United States, propounds that Defendant has fifteen criminal history points placing him in Criminal History Category VI.

On February 3, 1999, Defendant pled guilty and was convicted of driving on a suspended/revoked license, a misdemeanor, in violation of California Vehicle Code, and received a sentence of 30 days in jail.

On March 1, 2000, Defendant pled guilty and was convicted of driving on a suspended/revoked license, failure to stop, failure to provide proof of financial responsibility, failure to possess a license,

and failure to appear, all misdemeanors, in violation of the California Vehicle and Penal Codes, and received a total sentence of 8 days in jail and 3 years probation.

On December 15, 2000, Defendant pled guilty and was convicted of failure to provide, a misdemeanor, in violation of California Penal Code § 270, and received a sentence of 3 years probation. Defendant violated his probation on three separate occasions and received additional sentences: (1) September 3, 2002 - probation was revoked and reinstated under the same conditions; (2) April 9, 2003 - probation was revoked and reinstated with Defendant receiving a sentence of 50 days in jail; and (3) August 19, 2004 - probation was revoked and Defendant received a sentence of 180 days in jail.

On December 15, 2000, Defendant pled guilty and was convicted of driving on a suspended/revoked license, a misdemeanor, and failure to provide proof of financial responsibility, a misdemeanor, in violation of California Vehicle Code Section § 14601 and California Penal Code Section § 270, respectively, and received a sentence of 25 days in jail and 3 years probation.

On September 3, 2002, Defendant pled guilty and was convicted of petty theft, in violation of California Penal Code § 484/488, a misdemeanor, and received a sentence of  10 days in jail and 3 years probation.  On January 29, 2004, Defendant's probation was revoked and reinstated.

On September 30, 2003, Defendant pled guilty and was convicted of possession of a controlled substance, to wit, approximately 0.5 grams of heroin, in violation of California Health & Safety § 11350 and was sentenced to 3 years probation. Defendant violated his probation, which was revoked and reinstated, on three occasions: (1) October 21, 2003; (2) March 5, 2004; and (3) May 10, 2004.

On September 30, 2003, Defendant pled guilty and was convicted of burglary and petty theft, misdemeanors, in violation of California Penal Code §§ 459 and 484/488, and received a sentence of 18 days in jail and 3 years probation.

On September 3, 2004, Defendant pled guilty and was convicted of second-degree commercial burglary, a felony, in violation of California Penal Code § 459, and received a sentence of 16 months in prison.

On September 21, 2005, Defendant pled guilty and was convicted of being a deported alien found in the United States, in violation of 8 U.S.C. § 1326(a) and (b), and received a sentence of 30 months in prison and 2 years of supervised release.

### III

### MEMORANDUM OF POINTS AND AUTHORITIES

**A.   THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE UNITED STATES' CASE AGENT**

"[A] person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial.  Fed. R. Evid. 615.  Here, the case agent has been critical to the investigation and is considered by the United States to be an integral part of the trial team. Unless the Defendant can make a similar showing as to any of its witnesses, the United States requests that Defendant's testifying witnesses be excluded during trial.

**B.    THE COURT SHOULD ADMIT A-FILE DOCUMENTS AND TESTIMONY**

The United States intends to offer documents from the Alien Registration File, or "A-File," that correspond to Defendant's name and A-number in order to establish Defendant's alienage and prior deportation as well as the lack of documentation showing  that when he attempted to reenter the United States, Defendant had not sought or obtained authorization from the Secretary of the Department of Homeland Security.  The documents in the A-File are self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records."  Fed. R. Evid. 803(6).

The Ninth Circuit addressed the admissibility of A-File documents in United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997).  There, the defendant appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from his A-File.  Id. at 1317.  The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the Defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation.  The defendant argued that admission of the A-File documents violated the rule against hearsay, and denied him his Sixth Amendment right to confront witnesses.  The Ninth Circuit rejected his arguments, holding that the documents were properly admitted as public records.  Id. at 1318.  The court first noted that documents from a Defendant's immigration file, although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception."  Id. (quoting United States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)).  The court also held that such documents are self-authenticating and, therefore, do not require an independent foundation.  Id.

The Ninth Circuit has consistently held that documents from a defendant's immigration file are relevant in a § 1326 prosecution to establish the defendant's alienage and prior deportation and admissible under the public records exception to the hearsay rule.  See United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence); United States v. Contreras, 63 F.3d 852, 857-58 (9th Cir. 1995) (district court properly admitted warrant of deportation, deportation order and deportation hearing transcript); United States v. Hernandez-Rojas, 617 F.2d at 535 (district court properly admitted warrant of deportation as public record); United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-18 (9th Cir. 2001) ("deportation documents are admissible to prove alienage under the public records exception to the hearsay rule"); United States v. Dekermenjian, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (district court properly admitted "certain records and memoranda of the Immigration and Naturalization Service" as business records, noting that records would also be admissible as public records).

The public records exception is "a firmly rooted exception to the hearsay rule" and the admission of these records into evidence would not violate the Confrontation Clause. Hernandez-Herrera, 273 F.3d at 1217-18 (citing United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995)); see also Crawford v. Washington, 124 S. Ct. 1354, 1367 (2004) (admission of business records would not violate the Confrontation Clause because business records are not "testimonial" in nature).  Furthermore, the public records exception is one of the few hearsay exceptions that does not require a foundation.  Id. Documents that fall under the public records exception "are presumed trustworthy, placing 'the burden of establishing untrustworthiness on the opponent of the evidence.'"  Montiel v. City of Los Angeles, 2 F.3d 335, 341 (9th Cir. 1993) (quoting Keith v. Volpe, 858 F.2d 467, 481 (9th Cir. 1988)).  These documents will be certified and self-authenticating under Fed. R. Evid. 902(4).

At trial, a Special Agent with U.S. Border Patrol will be called to testify regarding the immigration documents contained in Defendant's A-File, record-keeping procedures, and the significance of certain documents in the file and such testimony will be based on her personal, on-the-job experience.   See Fed. R. Evid. 701 (such testimony is "helpful to a clear understanding of the determination of a fact in issue"); Loyola-Dominguez, 125 F.3d at 1317 (agent "served as the conduit through which the government introduced documents" from A-file).

1

**C.**     **THE COURT SHOULD ADMIT THE CERTIFICATE OF NON-EXISTENCE**

2

    The Certificate of Non-Existence ("CNR") does not constitute testimonial hearsay evidence

3

prohibited by Crawford v. Washington, 541 U.S. 36 (2004). Rather, it is properly admitted as a self-

4

authenticating, non-testimonial public record. Fed. R. Evid. 803(10), 902(1); United States v.

5

Cervantes-Flores, 421 F.3d 825, 831-34 (9th Cir. 2005) ("the CNR is nontestimonial evidence under

6

Crawford and thus was properly admitted by the district court"); United States v. Rueda-Rivera, 396

7

F.3d 678, 680 (5th Cir. 2005) (stating that the documents in a defendant's immigration file are

8

analogous to nontestimonial business records and that "the CNR . . ., reflecting the absence of a record

9

. . ., [does] not fall into the specific categories of testimonial statements referred to in Crawford"). As

10

such, the CNR will be produced to defense counsel as soon as it becomes available to the United States.

11

**D.**     **THE COURT SHOULD ADMIT THE AUDIOTAPE AND TRANSCRIPT OF DEFENDANT'S DEPORTATION HEARING**

12

13

    Absent a stipulation, the United States seeks to introduce the portion of the audiotape and

14

transcript of Defendant's removal hearing to establish Defendant's alienage. The audiotape of the

15

removal hearing was certified as genuine and authentic by the United States Immigration Court. The

16

audiotape of the removal hearing is also part of Defendant's official A-File, and, consequently, it is

17

admissible under the public records exception to the hearsay rule. See Fed. R. Evid.803(8)(B); United

18

States v. Hernandez-Herrera, 273 F.3d 1213, 1217-18 (9th Cir. 2001).

19

    Transcripts of tape-recorded proceedings may be given to a jury in a criminal trial for the

20

purpose of aiding the jury in following along a tape recording if certain precautions are taken to ensure

21

the accuracy of the transcript. See United States v. Ben-Shimon, 249 F.3d 98, 101 (2d Cir. 2001). Any

22

prejudice arising from the introduction of the transcript can be ameliorated by a limiting instruction

23

emphasizing the jury's role as ultimate fact-finder. See United States v. Chalarca, 95 F.3d 239, 246 (2d

24

Cir. 1996). The parties could stipulate to the portions of the audiotape and prepare a redacted transcript

25

that excludes references to Defendant's prior criminal convictions and any portions that relate to any

26

other aliens at the deportation hearing. Alternatively, to avoid undue delay and the potential for

27

prejudice, the United States proposes that the parties stipulate that Defendant admitted under oath during

28

his removal hearing on April 21, 2005 that: (1) he is not a United States citizen or national, and (2) he

is a citizen and national of El Salvador.

1

### E.     THE COURT SHOULD ADMIT CERTIFIED TRANSCRIPTS

The United States asks the Court to take judicial notice of the certified copy of the transcript of the September 21, 2005 plea colloquy in Case No. 05CR1641-FM, entered in the United States District Court for the Western District of Texas (El Paso Division), where Defendant admitted under oath that he was a citizen of El Salvador, was previously deported and removed, and had not sought permission to reenter the United States.  The certified copy of the transcript is an official court document and is presumed to accurately reflect testimony during proceedings.  See 28 U.S.C. § 753(b); Fed. R. Evid. 803(8)(B) (official records exception to hearsay); Fed. R. Evid. 902(4) (certified copy of public record is self-authenticating); United States v. Lumumba, 794 F.2d 806 (2d Cir. 1986) (court permitted trial transcript as a certified public document under Fed. R. Evid. 902(4)); Abatino v. United States, 750 F.2d 1442, 1445 (9th Cir. 1985); United States v. Hoffman, 670 F.2d 280, 286 (9th Cir. 1979); Warth v. Department of Justice, et al., 595 F.2d 521, 523 (9th Cir. 1979).

Here, the United States will offer a redacted version of the transcript and only refer to it as sworn testimony in a prior proceeding.  The sworn testimony will be Defendant's admissions of alienage and deportation and that he did not have permission to reenter the United States.  This evidence is directly relevant to prove three elements of the charged offense.  See Fed. R. Evid. 402 (stating, in part, "All relevant evidence is admissible").  Defendant's statements are admissible as non-hearsay under Fed. R. Evid. 801(d)(2).  The United States has already produced a copy of the certified transcript and will provide Defendant with a redacted version of the transcript in advance of trial.

### F.     THE COURT SHOULD ADMIT EXPERT TESTIMONY

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question.  Fed. R. Evid. 702.  Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge.  United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994).  An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field.  Fed. R. Evid. 703.  In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact.  Fed. R. Evid. 704.

On June 13, 2008, the Assistant United States Attorney and Defense Counsel, Candis Mitchell, agreed to stipulate that the fingerprints taken by U.S. Border Patrol Agent Michael Denning on March 3, 2008, as contained in Defendant's A-File (a copy of which has been produced to Defendant), belongs to Defendant. As such, the United States intends to offer testimony of a fingerprint expert, David Beers, to identify the Defendant as the person who was previously deported. The United States' fingerprint expert will testify that based upon fingerprint comparisons, Defendant was the same person deported on October 17, 2007 and who was found in the United States on March 3, 2008. In addition, the United States' fingerprint expert may testify to establish the foundation for any prior acts or convictions the United States seeks to use at trial. This expert testimony from a trained fingerprint examiner will certainly help the jury resolve questions about the defendant's identity and whether he has illegally re-entered the United States after being previously deported. Expert testimony from a trained fingerprint examiner will certainly help the jury resolve questions about the defendant's identity and whether he has illegally re-entered the United States after being previously deported. Accordingly, the Court should admit the testimony of the United States' fingerprint expert.

### G.    THE COURT SHOULD ADMIT 404(b) AND 609 EVIDENCE

#### 1.    Other Crimes, Wrongs, and Acts under Rule 404(b)

The United States intends to offer evidence regarding Defendant's illegal reentries into the United States. This conduct is relevant to Defendant's current case as it involves substantially the same conduct for which he is currently charged. Of particular note, on or about July 10, 2005, Defendant was found by U.S. Border Patrol agents in the United States after having been previously deported and without permission to reenter. On September 21, 2005, Defendant pled guilty to being a deported alien found in the United States, in violation of 8 U.S.C. § 1326, and received a sentence of 30 months in prison followed by 2 years of supervised release. Upon release from prison, the immigration order, dated April 21, 2005, was reinstated, and Defendant was deported and removed from the United States to El Salvador on October 17, 2007. The United States contends that this evidence, along with other evidence also provided to Defendant, may be offered by the United States in its case-in-chief as proof of elements of the offense and under Federal Rule of Evidence 404(b) to prove knowledge, intent, plan, opportunity and absence of mistake or accident. See, e.g., United States v. Cruz-Escoto, 476 F.3d 1081, 1088-89 (9th Cir. 2007) (admitting evidence of prior removals to prove elements of § 1326).

Rule 404 is entitled "Character Evidence Not Admissible To Prove Conduct; Exceptions; Other Crimes," and reads as follows:

> (a) **Character Evidence Generally.**–Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
>> (1) **Character of Accused.**–Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same, or if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under Rule 404(a)(2), evidence of the same trait of character of the accused offered by the prosecution;
>>
>> (2) **Character of the Alleged Victim.**–Evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor;
>>
>> (3) **Character of Witness.**–Evidence of the character of a witness, as provided in rules 607, 608, and 609.
>
> (b) **Other Crimes, Wrongs, or Acts.**–Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may,[1] however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404.

Rule 404(b) thus restates the long-settled rule that evidence of prior or subsequent bad acts or crimes cannot be admitted when the <u>sole</u> relevancy is to show disposition to commit crimes with which the defendant is charged.  <u>See</u> <u>generally</u> <u>Michelson v. United States</u>, 335 U.S. 469, 475-76 (1948); <u>United States v. Hernandez-Miranda</u>, 601 F.2d 1104, 1107-08 (9th Cir. 1979).  But the Rule, as the Ninth Circuit has noted, is an inclusionary one where "evidence of other crimes is inadmissible under this rule only when it proves nothing but the defendant's criminal propensities." <u>United States v. Sneezer</u>, 983 F.2d 920, 924 (9th Cir. 1992); <u>see</u> <u>also</u> <u>United States v. Hinostroza</u>, 297 F.3d 924, 928

---

[1]    It should be noted that the Advisory Committee Notes upon the enactment of the Rule underscored that the use of the word "may" in the rule "is not intended to confer any arbitrary discretion on the trial judge.  Rather, it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i.e., prejudice, confusion, or waste of time."  Fed. R. Evid. 404(b), advis. note 1974.

1  (9th Cir. 2002) (quoting <u>United States v. Ayers</u>, 924 F.2d 1468, 1473 (9th Cir. 1991)) ("The only time

2  such evidence may be excluded by rule 404(b) is if the evidence 'tends to prove <u>only</u> criminal

3  disposition.'") (emphasis in original); <u>United States v. Herrell</u>, 588 F.2d 711, 714 (9th Cir. 1978) ("This

4  court has also stated that Rule 404(b) is a rule of inclusion which admits evidence of other crimes or acts

5  relevant to an issue in the trial, except where it tends to prove only criminal disposition.") (internal

6  quotations and citations omitted).

7        On the other hand, when offered to prove something other than propensity–such as motive,

8  opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or

9  accident–Rule 404(b) applies to admit the "other act" evidence.  <u>See</u> Fed. R. Evid. 404(b); <u>United States

10 v. Montgomery</u>, 150 F.3d 983, 1000-01 (9th Cir. 1998); <u>United States v. Johnson</u>, 132 F.3d 1279, 1282

11 (9th Cir. 1997) ("So long as the evidence is offered for a proper purpose, such as to prove intent, the

12 district court is accorded wide discretion in deciding whether to admit the evidence and the test for

13 admissibility is one of relevance.").  In this regard, the Rule is of vital importance, especially in criminal

14 proceedings that typically involve inquiry into the intent of the accused.  As the Court stated in <u>United

15 States v. Huddleston</u>, 485 U.S. 681 (1988): "Extrinsic acts evidence may be critical to the establishment

16 of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the

17 only means of ascertaining that mental state is by drawing inferences from conduct."  <u>Id.</u> at 685.

18        When offered for one or more of the favored purposes enumerated in the Rule, "other act"

19 evidence is proper and becomes admissible if it meets the Ninth Circuit's five-part admissibility test.

20 The "other act" evidence may be admissible if (1) it tends to prove a material point; (2) it is not too

21 remote in time; (3) it is sufficient to support a finding that defendant committed the other act;[2]

22 (4) (in certain cases)[3] the act is similar to the offense charged; and (5) a determination under Rule 403 -

23

24        [2]    In <u>United States v. Huddleston</u>, 485 U.S. 681, 685 (1988), the Supreme Court ruled that
a district court need not make a preliminary finding that the offering party proved the specific act

25 evidence by a clear and convincing or preponderance of the evidence standard.  Instead, the Court held
that such evidence should be admitted if there is sufficient evidence to support a finding by the jury that

26 the defendant committed the specific act.  <u>See id.</u>

27        [3]    "When evidence of a prior act is offered to prove knowledge, the prior act need not be
similar to the charged act as long as the prior act was one which would tend to make the existence of

28 the defendant's knowledge more probable than it would be without the knowledge."  <u>United States v.</u>

(continued...)

whether the probative value is substantially outweighed by the prejudicial impact.  See United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002) (quoting United States v. Chea, 231 F.3d 531, 534 (9th Cir. 2000)); see also United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992) (restating test). Therefore, Rule 404(b) applies to either exclude "other act" evidence (when offered solely as improper conformity evidence), or to permit "other act" evidence (when offered for a proper purpose subject to the Ninth Circuit's five-part test).

The United States contends that the proffered evidence meets the test: (1) the evidence tends to prove a material point–Defendant's knowledge of his whereabouts and intent to enter the United States; (2) it is not too remote in time – the conduct occurred in 2005; (3) it is sufficient to support a finding that defendant committed the other acts; and (4) the acts are similar to the offense charged.  Moreover, under Rule 403, this evidence is highly probative and is not substantially outweighed by any prejudicial impact.   The evidence should be admitted to prove knowledge, plan, intent, opportunity, and lack of mistake or accident. In particular, this evidence demonstrates that he voluntarily entered the United States on the instant occasion, and that it was no mistake or accident that he entered the United States.

### 2.    Impeachment by Evidence of Conviction of a Crime under Rule 609

The United States intends to use Defendant's prior convictions for impeachment purposes under Rule 609. Specifically, should Defendant testify, the United States intends to inquire about Defendant's felony convictions on (1) September 30, 2003 for violating California Health & Safety Code § 11350 (possession of 0.5 grams of heroin); (2) September 2, 2004 for violating California Penal Code § 459 (second-degree commercial burglary); and (3) September 21, 2005 for violating 8 U.S.C. § 1326 (deported alien found in the United States).   The United States will also use Defendant's felony convictions should Defendant contend that he had permission to enter the United States or that he did not need permission to enter.  If Defendant testifies at trial, he will place his credibility squarely at issue, and the United States should be able to inquire in particular his conviction.

---

[3/](...continued)
Santa-Cruz, 48 F.3d 1118, 1119 (9th Cir. 1995) (quoting United States v. Arambula-Ruiz, 987 F.2d 599, 603 (9th Cir. 1993)).  When the evidence is offered to show intent, however, the similarity requirement is of utmost importance.  See United States v. Adrian, 978 F.2d 486, 492-493 (9th Cir. 1992) (noting the significance of similarity for intent type evidence because "if the prior act is not similar, it does not tell the jury anything about what the defendant intended to do in his later action").

1    Federal Rule of Evidence 609(a) provides in pertinent part:

2       For purposes of attacking the credibility of a witness, (1) evidence that a witness other
         than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if
3        the crime was punishable by death or imprisonment in excess of one year under the law
         under which the witness was convicted, and evidence that an accused has been convicted
4        of such a crime shall be admitted if the court determines that the probative value of
         admitting this evidence outweighs its prejudicial effect to the accused; and (2) evidence
5        that any witness has been convicted of a crime shall be admitted if it involved dishonesty
         or false statement, regardless of punishment.

6

7    Fed. R. Evid. 609(a).  The Ninth Circuit has listed five factors that the district court should balance in

8    making the determination required by Rule 609.  United States v. Browne, 829 F.2d 760, 762-63 (9th

9    Cir. 1987).  Specifically, the court should consider 1) the impeachment value of the prior crime; 2) the

10   point in time of the conviction and the witness's subsequent history; 3) the similarity between the past

11   crime and the charged crime; 4) the importance of the Defendant's testimony; and 5) the centrality of

12   the Defendant's credibility.  Id. at 762-63.  See also United States v. Hursh, 217 F.3d 761 (9th Cir. 2000).

13       Here, the five Browne factors weigh heavily in favor of admissibility with regard to all three

14   felony convictions.  First, the impeachment value of Defendant's felony convictions is high, as each

15   conviction involves a serious crime.  Defendant received a significant sentence for each crime and his

16   disregard for the law casts serious doubt upon his honesty.  Second, Defendant's felony convictions

17   occurred in 2003, 2004, and 2005, which is within the ten year period under Rule 609(b).  Third, two

18   of the three prior felony convictions are not similar to the crime charged.  Thus, there is no risk that the

19   jury would draw the impermissible conclusion that Defendant committed the charged crime because he

20   previously committed the same crime.  With regard to the crime of being a deported alien found in the

21   United States, the Court can sanitize this conviction so that the jury does not draw an impermissible

22   conclusion.  Fourth, the importance of Defendant's testimony is crucial in a case such as this.  For

23   example, if Defendant contends he had permission to be in the United States, each of his felony

24   convictions would become highly relevant.  In addition, if Defendant testifies that he had received, or

25   did not need, permission to enter the United States, he would essentially "open the door" to his criminal

26   history: Defendant's convictions would preclude him from receiving permission to enter the United

27   States.  Finally, because such a challenge could only be developed through Defendant's own testimony,

28   his credibility in asserting such a challenge would be central to the case.

Furthermore, whatever risk of unfair prejudice exists can be adequately addressed by sanitizing the each of the felony convictions and providing the jury with a limiting instruction. Accordingly, the United States should be allowed to introduce evidence of Defendant's prior felony convictions under Rule 609(a) if Defendant elects to testify at trial.

### H.    THE COURT SHOULD PROHIBIT ANY COLLATERAL ATTACK ON DEFENDANT'S PRIOR DEPORTATION

The lawfulness of Defendant's prior deportation order is not an element of the offense in a prosecution under 8 U.S.C. § 1326. Therefore, any question about the lawfulness of the deportation should not be submitted to the jury for determination.

In United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996) (en banc), the Ninth Circuit overruled its prior decision in United States v. Ibarra, 3 F.3d 1333 (9th Cir. 1993), insofar as it held that the lawfulness of a prior deportation is an element of the offense under § 1326. The Alvarado-Delgado Court noted that while some jurisdictions hold that a prior deportation is an element of the offense if the deportation is "lawful," the statute itself contains no such limitation, stating simply "[a]ny alien who has been arrested and deported or excluded or deported," 8 U.S.C. § 1326(a)(1), "will be guilty of a felony if the alien thereafter, enters, attempts to enter, or is at any time found in the United States." 8 U.S.C. § 1326(a)(2).

As a matter of law, all that the United States has to prove is that the Defendant is the same person who was removed on May 11, 2005 and October 17, 2007. See United States v. Suarez-Rosario, 237 F.3d 1164 (9th Cir. 2001). Because the lawfulness of the prior deportation is not an element of the offense under § 1326, Defendant does not have a right to have the issue determined by a jury. This includes any attempt by Defendant to challenge the prior deportation as invalid due to any alleged deportation under an alias or fictitious name. Moreover, in United States v. Garza-Sanchez, 217 F.3d 806, 808 (9th Cir. 2000), the Ninth Circuit held that a Defendant who previously waived his right to appeal cannot collaterally attack his deportation:

> A Defendant charged under 8 U.S.C. § 1326 may not collaterally attack the underlying deportation order if he or she did not exhaust administrative remedies in the deportation proceedings, including direct appeal of the deportation order. Accordingly, a valid waiver of the right to appeal a deportation order precludes a later collateral attack.

Id. (citations omitted).

14                                                                                    08CR1008-LAB

In this case, Defendant validly waived his right to appeal his April 21, 2005 deportation order and, therefore, should be precluded from collaterally attacking his deportation. It would be inappropriate to raise this issue before a jury, which is not tasked with determining the validity of the deportation.

## I.  COURT SHOULD PROHIBIT CERTAIN REFERENCES BY DEFENDANT

### 1.  Prohibit Reference to Why Defendant Reentered the United States

Defendant may attempt to offer evidence of the reason for his re-entry, or alternatively, his belief that he was entitled to do so. Defendant may also attempt to offer evidence of the reason for his being in the United States, or alternatively, his belief that he was entitled to be here. The Court should preclude him from doing so. Evidence of why Defendant violated 8 U.S.C. § 1326 is irrelevant to the question of whether he did so—the only material issue in this case.

Rule 401 defines "relevant evidence" as: "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without evidence." Fed. R. Evid. 401. Rule 402 states that evidence "which is not relevant is not admissible." Fed. R. Evid. 402.

Here, the reason why Defendant reentered the United States and was found in the United States, and any alleged belief that he was justified in doing so, is irrelevant to whether he violated the statute. See, e.g., United States v. Leon-Leon, 35 F.3d  35 F.3d 1428 (9th Cir. 1994). In Leon-Leon, a 1326 found-in case, the defendant sought to introduce evidence at trial that he was in possession of a green card to establish that he reasonably believed he had permission to reenter the United States. Id. at 1432. Recognizing that a 1326 found-in case is a general intent crime, the Ninth Circuit found that "[e]vidence that [the defendant] possessed a green card was not relevant," and therefore concluded that the district court did not abuse its discretion in denying admission of that evidence. Id. 1432-33. In other words, the United States does not need to show that the defendant knew that he did not have permission to reenter the United States, only that there was no permission. Id. Similarly here, the reason why Defendant reentered the United States and his belief that he was entitled to do so, and the reason why he was in the United States and his belief that he was entitled to be here, is irrelevant to any fact at issue in this case.

## 2.    Prohibit Reference to Defendant's Prior Residency

If Defendant seeks to introduce evidence at trial of any former residence in the United States, legal or illegal, the Court should preclude him from doing so.  This evidence is irrelevant, inconsistent with congressional intent, and unduly prejudicial.  In United States v. Ibarra, 3 F.3d 1333, 1334 (9th Cir. 1993), overruled on limited and unrelated grounds by United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996), the district court granted the United States' motion in limine to preclude the defendant from introducing "evidence of his prior legal status in the United States, and the citizenship of his wife, mother and children" in a § 1326 prosecution.  Id.  The Ninth Circuit affirmed, reasoning that the district court properly excluded the evidence as irrelevant because the defendant had failed to demonstrate how the evidence could possibly affect the issue of his alienage.

Similarly, in United States v. Serna-Vargas, 917 F. Supp. 711 (C.D. Cal. 1996), the defendant filed a motion in limine to introduce evidence of what she termed "de facto" citizenship as an affirmative defense in a Section 1326 prosecution.  Id. at 711.  Specifically, she sought to introduce evidence of: (1) involuntariness of initial residence; (2) continuous residency since childhood; (3) fluency in the English language; and (4) legal residence of immediate family members.  See id. at 712.  The court refused to admit the evidence, noting that  "none of these elements are relevant to the elements that are required for conviction under § 1326."  Id. at 712.  The court also noted that admission of the evidence would run "contrary to the intent of Congress."  Id.  In particular, the court stated that, under Section 212 of the Immigration and Naturalization Act of 1952, 8 U.S.C. § 1182(c)), the Attorney General of the United States may exercise his discretion not to deport an otherwise deportable alien, if the alien has lived in the United States for seven years.  See id. at 712-13.

Put differently, the court found that the factors which the defendant relied upon to establish her de facto citizenship are "among the factors the Attorney General considers in deciding whether to exercise this discretion."  Id. at 713.  Thus, "the factors that [the defendant] now seeks to present to the jury are ones that she could have presented the first time she was deported."  Id.  Therefore, the court held, "[a]llowing her to present the defense now would run contrary to Congress' intent."  Id.  In particular, "under the scheme envisioned by Congress, an alien facing deportation may present evidence

16

1  of positive equities only to administrative and Article III judges, and not to juries." Id.  As such, the

2  Court should prohibit reference to Defendant's prior residency in the Untied States – legal or illegal.

### 3.    Prohibit Reference to Alleged Document Destruction or Poor Recordkeeping

4      The United States seeks to exclude the Defendant from making reference or eliciting testimony

5  regarding (former) Immigration and Naturalization Services' ("INS"), now Department of Homeland

6  Security's record keeping or access to information and records.  Specifically, the United States seeks

7  to preclude reference to argument that (1) INS computers are not fully interactive with other federal

8  agencies' computers, (2) over two million documents filed by immigrants have been lost or forgotten,

9  (3) other federal agencies have the ability and authority to apply for an immigrant to come into the

10  United States, or (4) the custodian of the A-File never checked with other federal agencies to inquire

11  about documents relating to the Defendant.  Such argument is irrelevant based upon the facts of this case

12  as there has been no proffer or mention by the Defendant that he ever made application to seek reentry

13  after deportation.  See United States v. Rodriguez-Rodriguez, 364 F.3d 1142 (9th Cir. 2004) (affirming

14  Judge Lorenz's rulings to deny such testimony in a § 1326 "found-in" case with similar facts).

15      In Rodriguez-Rodriguez, the Ninth Circuit Court of Appeals held that any such testimony or

16  cross examination seeking to elicit such testimony is properly barred as irrelevant.  Id. at 1146.  The

17  Ninth Circuit explicitly rejected defense counsel's claim that the district court's exclusion of the

18  anticipated testimony violates the Confrontation Clause.  Id.  Instead, it declared that "none of the that

19  information is relevant on the facts of this case, because it is uncontested that Rodriguez never made

20  any application to the INS or any other federal agency."  Id.  Thus, absent at a minimum a proffer that

21  Defendant had in fact applied for or obtained permission to enter or remain in the United States in this

22  instant case, any such line of inquiry on cross examination or on direct testimony is irrelevant and

23  properly excludable.

24      Additionally, the United States seeks to preclude reference to shredding of immigration

25  documents by a (former) INS contractor as set forth in United States v. Randall, et al., Criminal Case

26  No. SA CR 03-26-AHS (C.D. Cal. 2003) unless the Defendant testifies or offers evidence that (1) he

27  did in fact apply for permission to reenter the United States from the Attorney General, or his designated

28  successor, the Secretary of the Department of Homeland Security and (2) that such a document would

1    have been stored at that particular facility where the shredding occurred in the <u>Randall</u> case.   Any

2    reference of document destruction is irrelevant and unfairly prejudicial unless there is some evidence

3    offered by the Defendant at trial that he did in fact seek permission to reenter the United States.  <u>See</u>

4    Fed. R. Evid. 401-403.  Moreover, even if the Defendant offers evidence that he did apply, there must

5    be some showing that his application would have been stored at the facility which is the subject of the

6    <u>Randall</u> case during the time of the alleged shredding of the documents.   Otherwise, it is immaterial

7    and irrelevant whether a contractor of (former) INS destroyed documents at the INS California Service

8    Center in Laguna Niguel, California because the Defendant did not apply, or if he did apply, his

9    application was not stored there, and therefore, could not have been effected.   Such testimony as well

10   as any such statements asserted in Defendant's opening or closing arguments would be unfairly

11   prejudicial to the United States and likely to cause confusion to the jury because such unsupported

12   blanket allegations or references of document destruction or poor record keeping without any showing

13   by the Defendant that he applied for permission to reenter would be misleading.   Accordingly, the

14   United States seeks an order precluding such argument.

15              **4.      <u>Prohibit Reference to Age, Health, Finances, Education, and Punishment</u>**

16          Evidence and argument referring to Defendant's health, age, finances, education and potential

17   punishment is inadmissible and improper. As noted previously, Rule 402 provides that "[e]vidence

18   which is not relevant is not admissible," and Rule 403 provides that even relevant evidence may be

19   inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice."  The

20   Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal

21   likes or dislikes, opinions, prejudices, or sympathy."  9th Cir. Model Jury Instructions § 3.1 (2003).[4/]

22   While Defendant's health, age, finances, education and proper punishment may be relevant at

23   sentencing, 18 U.S.C. § 3553(f), references to such facts at trial are irrelevant, unfairly prejudicial, and

24   blatantly improper plays for sympathy and jury nullification.

25   / /

26   / /

27   ───────────────

28          [4/]      Additionally, it is inappropriate for a jury to be informed of the consequences of their
     verdict, <u>United States v. Frank</u>, 956 F.2d 872, 879 (9th Cir. 1991), such as references to punishment or
     the collateral consequences of a conviction.

**J.    THE COURT SHOULD PRECLUDE EXPERT TESTIMONY BY DEFENSE**

In its motion for reciprocal discovery, the United States requested permission to inspect, copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. While defense counsel may wish to call an expert to testify, Defendant has provided neither notice of any expert witness nor any reports by expert witnesses. Thus, Defendant should not be permitted to introduce any expert testimony.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualification and relevant of the expert's testimony pursuant to Federal Rule of Evidence 702 and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 150 (1999). <u>See</u> <u>United States v. Rincon</u>, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); <u>see</u> <u>also</u> <u>United States v. Hankey</u>, 203 F.3d 1160, 1167 (9th Cir.), <u>cert.</u> <u>denied</u>, 530 U.S. 1268 (2000).

**K.    THE COURT SHOULD PRECLUDE DEFENDANT'S ARGUMENT THAT <u>HE REENTERED BASED UPON "WARNING TO ALIEN DEPORTED"</u>**

The Court should preclude any argument that Defendant believed: (1) he was not required to obtain the permission from the Attorney General, or his designated successor at the Secretary of the Department of Homeland Security, prior to re-entering the United States; or (2) he had permission to enter the United States based on any confusion or alleged error in the execution of the I-294 Warning to an Alien Deported. The Ninth Circuit held that such a claim is legally insufficient and that such an argument is improper. <u>See</u> <u>United States v. Ramirez-Valencia</u>, 202 F.3d 1106, 1109-10 (9th Cir. 2000).

**L.    THE COURT SHOULD PRECLUDE DEFENDANT'S ARGUMENT THAT HE REENTERED BASED UPON DURESS AND NECESSITY**

Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. <u>See</u> <u>United States v. Bailey</u>, 444 U.S. 394 (1980) (addressing duress); <u>United States v. Moreno</u>, 102 F.3d 994, 997 (9th Cir. 1996), <u>cert.</u> <u>denied</u>, 522 U.S.

826 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where "the evidence, as described in the Defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, Defendant must establish a prima facie case that:

(1)    Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2)    Defendant had a well-grounded fear that the threat would be carried out; and

(3)    There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A Defendant must establish the existence of four elements to be entitled to a necessity defense:

(1)    that he was faced with a choice of evils and chose the lesser evil;

(2)    that he acted to prevent imminent harm;

(3)    that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4)    that there was no other legal alternative to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States is unaware of any evidence that would support the defenses of either duress or necessity. Accordingly, the United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments when, as anticipated, there is an inadequate factual basis for them. The United States moves the Court for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense.

08CR1008-LAB

1        **M.    THE COURT SHOULD PRECLUDE SELF-SERVING HEARSAY**

2        Defendant may attempt to prove his own statements through the testimony of another witness.

3 Defendant may not do so for several reasons.

4        First, Defendant cannot rely on Rule 801(d)(2) of the Federal Rules of Evidence to admit self-

5 serving hearsay.  Under Rule 801(d)(2), a statement of a party is not hearsay only when it is being

6 offered against the party—not when it is being offered on his behalf.  See United States v. Fernandez,

7 839 F.2d 639, 640 (9th Cir.) (per curiam), cert. denied, 488 U.S. 832 (1988).  Defendant would be the

8 proponent of the evidence; it would not be offered against him.  Thus, Defendant would be seeking

9 improperly to have his own self-serving hearsay statements brought before the jury without allowing

10 the United States to cross-examine the defendant himself.  See id. ("It seems obvious defense counsel

11 wished to place [the defendant's] statement to [the officer] before the jury without subjecting [the

12 defendant] to cross-examination, precisely what the hearsay rule forbids.").

13        Second, Defendant could not admit such testimony under Rule 801(d)(1)(B).  This rule provides

14 an exception to the hearsay rule for a statement offered to rebut a charge of recent fabrication.  However,

15 the testimony would be admissible only if the defendant himself were to take the stand and be

16 impeached.  See United States v. Navarro-Vareles, 551 F.2d 1331, 1334 (9th Cir. 1976).

17        Finally, Defendant's out-of-court statements would not be admissible under Rule 803(3)—the

18 only other rule that might conceivably apply.  Rule 803(3) excludes from the definition of hearsay a

19 statement of the declarant's "then existing state of mind, emotion, sensation, or physical condition (such

20 as intent, plan, motive, design, mental feeling, pain and bodily health) but not including a statement of

21 memory or belief to prove the fact remembered or believed." United States v. Cohen, 631 F.2d 522 (5th

22 Cir. 1980).  "A person's belief may not be proved by previous out-of-court statements." Id.  Indeed,

23 United States v. Emmert, 829 F.2d 805 (9th Cir. 1987), clearly precludes the defendant from introducing

24 his beliefs through statements of other witnesses.  In Emmert, the Ninth Circuit affirmed the decision

25 of U.S. District Judge Rudi M. Brewster to exclude testimony by a witness that the defendant told the

26 witness that the defendant was afraid of government agents.  The Ninth Circuit cited Cohen with

27 approval and emphasized that Rule 803(3) excludes evidence of a statement of belief in order to prove

28 the fact believed.  For the rule to have any effect, the Court stated, it must be understood to limit the

universe of admissible statements to declarations of condition, *i.e.*, "I'm scared" and not belief, *i.e.*, "I'm scared because an undercover agent threatened me." See id.  As such, the Court should preclude self-serving hearsay.

**N.      RENEWED MOTION FOR RECIPROCAL DISCOVERY**

The Court has granted the United States' request for reciprocal discovery.  As of the date of these motions, Defendant has produced no reciprocal discovery.  The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of all witnesses, except for those of Defendant.  Defendant has not provided the United States with any documents or statements.  Accordingly, the United States intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States respectfully asks that the Court grant the United States' motions in limine.

DATED: June 16, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney


/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney